UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PROTO GAGE, INC.,

        Plaintiff,

v.

FEDERAL INSURANCE
COMPANY,

        Defendant.

_____/

Case No. 21-12286

HON. MARK A. GOLDSMITH

## OPINION & ORDER
## (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (Dkt. 37), (2) DENYING DEFENDANT'S MOTION TO PERMIT DISCOVERY (Dkt. 38), AND (3) STAYING THE CASE

Plaintiff Proto Gage, Inc. and Defendant Federal Insurance Company, Incorporated dispute whether, under the applicable insurance policies, Proto Gage is entitled to payment for its asserted business income losses allegedly resulting from the failures of two press machines. Federal has refused to submit to the statutory appraisal process to resolve the claims and argues that the Court must first determine whether Proto Gage's lost business income is covered under the policies. Proto Gage argues that the dispute is not one of "coverage"—i.e., the meaning of policy terms. Rather, it says the dispute is one of causation—i.e., whether the press failures caused its lost business income. Under that view, the issue of causation is for the statutory appraisal process to resolve. Proto Gage moves for summary judgment on the issue of whether there are no coverage issues for the Court to decide such that appraisal is appropriate. Federal challenges Proto Gage's motion, arguing that causation is part of the coverage issue, which this Court should resolve. Consistent with that view, it moves for discovery under Federal Rule of Civil Procedure 56(d).

Because there are no coverage issues for the Court to resolve, the Court grants Proto Gage's motion

and denies Federal's motion.[1]

## I.  BACKGROUND

The parties substantially agree about the facts giving rise to this case.  Proto Gage, a metal

stamping and production supplier, and Federal, a commercial insurer, are parties to insurance

contracts.  Pl. Stat. of Material Facts (SOMF) ¶ 2.  The policies provide coverage for Proto Gage's

"Business Income With Extra Expense," under which Federal agreed to pay for Proto Gage's lost

business income and extra expenses that Proto Gage sustained from "impairment of

operations" resulting from "physical loss or damage by a covered peril to property" until

Proto Gage's operations are restored.[2]  Id.; 2015 Policy at PageID.144 (Dkt. 10-1); 2016

Policy at PageID.391 (Dkt. 10-2).

Proto Gage experienced failures of two of its press machines—a failure of a 450-ton

press (P203) in 2015 and a failure of an 800-ton press in 2016.  Pl. SOMF ¶¶ 3–7; Def.

Counter Stat. of Mat. Facts (CSOMF) ¶ 3.  The parties do not dispute that the failures resulted

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing.  See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b).  In addition to Proto Gage's motion (Dkt. 37), the briefing includes Federal's combined response to Proto Gage's motion for summary judgment and motion for discovery (Dkt. 38) and Proto Gage's reply (Dkt. 39).

[2] The polices define "business income" as "net profit or loss, including rental income from tenants and net sales value of production, that would have been earned or incurred before income taxes; [insured's] continuing normal operating and payroll expenses; charges [insured] incur which are the legal obligation of [insured's] tenant which would otherwise be [insured's] obligations; and the cost [insured] are required to pay to rent temporary premises when that portion of the premises shown in the Declarations occupied by [insured] is untenable, not to exceed the fair rental value of such untenable portion of the building [the insured] occup[ies].  2015 Policy at PageID.212; 2016 Policy at PageID.459."  "Extra expense" is defined as "necessary expenses [insured] incur[s]: in an attempt to continue operations, over and above the expenses [insured] would have normally incurred; and to repair or replace any property . . . ."  2015 Policy at PageID.215; 2016 Policy at PageID.462.

from a "peril not otherwise excluded."  Resp. at 22; Answer ¶¶ 10–12 (Dkt. 10); Br. Supp. Mot. Summ. J. at 21.  But this is essentially where the parties' agreement ends.

Following the press failures, Proto Gage submitted notices of claims under the policies providing coverage for lost business income with extra expense that it says it incurred while its operations were impaired.  Pl. SOMF ¶ 12; Def. CSOMF ¶ 12; Kiger Decl. ¶ 10 (Dkt. 38-1).  According to Proto Gage, its impaired operations caused it to miss shipment dates to customers and eventually resulted in fewer requests for quotes and accepted customer bids.  Pl. SOMF ¶¶ 9–11.

In response to Proto Gage's claims, Federal issued to Proto Gage a series of payments under the policies in connection with Proto Gage's lost business income and extra expenses which totaled around $1,300,000, of which $299,276 was attributed specifically to Proto Gage's lost business income.  Pl. SOMF ¶ 12; Def. CSOMF ¶ 12; Answer ¶ 12.[3]  Proto Gage asserts that it is owed an additional sum of nearly $12 million attributable to business income losses resulting from failure of the presses.  Pl. SOMF ¶ 16.  Federal rejects this claim and asserts that its furnishing of $299,276 for Proto Gage's asserted lost business income was an overpayment and was provided "as an accommodation" prior to completing its investigation of Proto Gage's claims.  Def. CSOMF ¶ 12; Kiger Decl. ¶ 16. Federal submits that this investigation revealed that Proto Gage's lost business income was not caused by the press failures.  Id.

Disagreeing with Federal's determination regarding Proto Gage's lost business income, Proto Gage demanded appraisal under Mich. Comp. L. § 500.2833(1)(m), which

---

[3] The remainder of Federal's payments to Proto Gage were attributed to "extra expense."  Pl. SOMF ¶ 12; Def. CSOMF ¶ 12; Answer ¶ 12.

requires parties to fire insurance policies subject to this provision to submit disputes regarding an insured's "amount of [] loss" to an appraisal process.  Pl. SOMF ¶ 15; Def. CSOMF ¶ 15.[4]  Federal rejected Proto Gage's demand, asserting that the parties' disagreement is about whether Proto Gage's lost business income is covered under the policy—rather than a dispute about the "amount of loss" Proto Gage suffered.  Def. CSOMF ¶¶ 16–17.  Proto Gage filed suit seeking a judgment that Proto Gage's claim be submitted to appraisal.  Compl. ¶ 10 (Dkt. 1).  Federal has brought a counterclaim for a declaratory judgment ordering Proto Gage to repay the $299,276.  Answer and Counterclaim.

Following its review of the parties' joint statement regarding appraisal, the Court directed Proto Gage to file a motion for summary judgment on the issue of whether there are no coverage issues for the Court to decide such that this matter should be resolved through the statutory appraisal process.  See 12/7/2022 Order (Dkt. 35).

## II. ANALYSIS[5]

Proto Gage's motion seeks an order declaring (i) that the policies cover its business income losses from the press failures, and (ii) that the parties must submit their dispute for appraisal, with the Court retaining jurisdiction for entry of a judgment pursuant to the appraisal award.  Pl. Mot. ¶¶ 1–7.  For its part, Federal moves for an order permitting

---

[4] The parties do not dispute that § 500.2833(1)(m) governs the policies at issue.

[5] In assessing whether either party is entitled to summary judgment on any claim, the Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007).  The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can survive summary judgment only by coming forward with evidence showing there is a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

discovery under Federal Rule of Civil Procedure 56(d).  The Court proceeds by discussing Proto Gage's motion, its impact on Federal's counterclaim, and Federal's Rule 56(d) motion.

### A. Appraisal

Michigan law, which governs in this diversity action, employs a statutory process through which insurers and insureds can efficiently resolve disputes about the amount of an insured's covered loss through an appraisal process.  See Mich. Comp. L. § 500.2833(1)(m) ("[I]f the insured and insurer fail to agree on the actual cash value or amount of the loss, either party may make a written demand that the amount of the loss . . . be set by appraisal . . . .").  To distinguish whether a policy dispute should be resolved by appraisers or a court, the leading Michigan case on the subject has explained that "the issue of coverage is for the court, not the appraisers . . . .  Where the parties cannot agree on coverage, a court is to determine coverage in a declaratory action before an appraisal of the damage to the property."  Auto-Owners Ins. Co. v. Kwaiser, 476 N.W.2d 467, 469–470 (Mich. Ct. App. 1991).

Although Kwaiser does not specifically define what constitutes an "issue of coverage," federal courts addressing this issue offer guidance.  Interpreting Michigan case law, the United States Court of Appeals for the Sixth Circuit explained that the district court "interpret[s] [a] policy's terms" and "appraisers resolve . . . any factual disputes about the amount of an insured's loss."  Scottsdale Ins. Co. v. Altman Mgmt. Co., 832 F. App'x 998, 999 (6th Cir. 2021).  In other words, while "coverage issues" for resolution by courts include "legal questions of what [a] policy does or does not cover," appraisers "resolve factual disputes . . . such as whether particular damage was caused by a covered event or some other cause . . . ."  Seneca Special Ins. Co. v. ID Ventures, LLC, No. 22-cv-11599, 2023 WL

2618253, at \*4–\*5 (E.D. Mich. Mar. 23, 2023) (explaining that the parties' dispute regarding whether policy language allowed insured to recover loss of value to building as a result of fire, despite receiving full pre-fire value in a post-fire sale, was a threshold issue for the court, while the parties' dispute regarding the amount of loss caused by fire damage was question of fact for appraisers).

Following the Sixth Circuit's lead, "courts in this district have universally adopted a broad view of Kwaiser," and consistent with this broad view, have repeatedly held that appraisers—and not the courts—resolve disputes regarding causation. Shina v. State Farm Fire & Cas. Co., No. 22-cv-010080, 2022 WL 989330, at \*4 (E.D. Mich. Mar. 31, 2022) (Shina II) (collecting cases).[6] "Thus, courts make legal determinations as to the categories of coverage; appraisers make factual findings as to whether specific damage fits into those categories or not." Cox v. State Farm Fire & Cas. Co., No. 19-12235, 2020 WL 1888824, at \*7 (E.D. Mich. Apr. 16, 2020).

Proto Gage argues that the parties' disagreement concerns a factual dispute regarding whether Proto Gage's lost business income was caused by the press failures, and that this is a fact question reserved for the appraisers. Br. Supp. Summ. J. at 12. Proto Gage submits that the press breakdowns impaired its operations by preventing it from timely shipping product to customers, which in turn negatively impacted Proto Gage's ability to solicit quotes and secure new bids from those customers. Id. at 15–16.

---

[6] See Shina II, 2022 WL 989330, at \*4 (citing Hart v. State Farm Fire & Cas. Co., 556 F. Supp. 3d 735, 746 (E.D. Mich. 2021) (rejecting insurer's argument that the "scope of repairs" to a fire-damaged home was a "matter of coverage and not of price"); Laframboise v. State Farm Fire and Cas. Co., No. 1:21-cv-12876, 2022 WL 627147, at \*7 (E.D. Mich. Mar. 3, 2022) (concluding that there was no coverage dispute where parties disagreed about whether damage to a house from a fallen tree caused mold damage and necessitated rebuilding of the house because this disagreement necessitated a "factual assessment of the house").

Federal counters that its denial of Proto Gage's alleged business income losses poses a coverage dispute that must be resolved by the Court because Proto Gage has not demonstrated that it has suffered any business losses as a result of the press failures. Resp. at 1, 15–22. Notably, Federal does not dispute the meaning of any term under the policy; it only disputes whether Proto Gage can meet its evidentiary burden of "establishing [that] coverage exits for [its] business income claims." Id. at 15–16. According to Federal, Proto Gage's asserted business losses resulted from causes unrelated to the press breakdowns. Def. CSOMF ¶ 24. Federal further maintains that none of Proto Gage's customers reduced their demand for Proto Gage's products as a result of the press breakdowns. Id. at ¶¶ 24–27; Resp. at 16 (submitting that "[Proto Gage's] contentions about receiving less RFQs, less Awards, and less income are entirely based on speculation" and that "nothing about either mechanical breakdown event caused or resulted in an actual loss of business income").

A review of the operative policies helps to frame the parties' dispute. The applicable policy terms at issue and the meaning ascribed to those terms are not disputed by the parties. As set forth in the policies, Federal agreed to pay for lost "business income" and "extra expenses" that Proto Gage sustained from "impairment of operations" resulting from "physical loss or damage by a covered peril to property" until Proto Gage's operations were restored. See 2015 Policy at PageID.222; 2016 Policy at PageID.469. Put simply, the applicable polices address (i) the types of losses (or "perils") covered and (ii) the categories of resulting damages covered by the policies.

The Court agrees with Proto Gage that the parties' disagreement is a factual dispute for resolution by the appraisers. Federal does not dispute that the presses were damaged by perils covered under the policies—that is, Federal does not interpret the applicable policy

language to mean that the press breakdowns are not a covered peril.  See Resp. at 22 (acknowledging that parties have "agreement on covered physical damage to Press P203 and Press101"); Answer ¶ 12 (admitting that Federal previously "made payments" to Proto Gage for "extra expenses" in connection with the press breakdowns).   Because the parties do not disagree as to "what the polic[ies] do[] or do[] not cover," the core of the dispute depends on "factual conclusions" such as "whether particular damage [i.e., lost business income] was caused by a covered event or some other cause, the extent of damage, or the cost to [compensate the insured] that damage."  Seneca, 2023 WL 2618253, at *4.  These are factual questions that are assigned to appraisers to resolve.  See id.; see also Laframboise, 588 F. Supp. 3d at 764 (granting plaintiff-insured's motion for summary judgment on appraisal "[b]ecause neither of the parties finds any issue with the clarity of the insurance policy requiring judicial interpretation (i.e., a coverage issue)").

Federal resists this conclusion by arguing that under Michigan law, as interpreted by the Sixth Circuit in D Boys, LLC v. Mid-Century Ins. Co., 644 F. App'x 574 (6th Cir. 2016), Proto Gage does not have an appraisable claim.  Resp. 20.  Federal cites D Boys for the proposition that there are "numerous disputed factual issues regarding the lack of coverage" such that Federal "is entitled" to contest liability in a manner that "is not circumvented by the statutory appraisal process."  Resp. at 22–23 (quoting D Boys, 644 F. Appx at 579).  The Court disagrees.

In D Boys, a windstorm damaged three of the plaintiffs' ten apartment buildings (buildings C, D, and J).  Id. at 575.  Plaintiffs first filed a claim regarding damage to building J, which the insurer admitted was covered under the policy.  Id.  Plaintiffs then filed a second claim alleging buildings C and D were damaged by the same windstorm, but the insurer

denied this claim, arguing that the damage to these buildings was caused by wear and tear, which was not covered under the policy.  Id.  The Sixth Circuit held that where an insurer denied liability for a separate claim for damage to a physically distinct structure, there was a coverage issue, rather than an amount-of-loss issue for appraisal—even though there were no disputes about policy interpretation, and even though the parties agreed that windstorm damage was covered while wear-and-tear damage was not covered.  Id. at 578–579.

Federal argues that, like the separate claims stemming from damage to different structures in D Boys, Federal's coverage of the physical damage to the presses is separate from its denial of claims for lost business income, and that the issue of lost business income poses a distinct coverage question.  Resp. at 22.  However, D Boys is not persuasive authority and is, in any event, distinguishable. [7]

The Court respectfully disagrees with how D Boys has construed Michigan's statutory appraisal scheme.  D Boys appears to say that if an insurer denies coverage on the grounds that it disputes whether a covered peril caused the loss, the insurer can block the appraisal process and force the dispute into court.  See 644 F. Appx at 578–579.  There are a number of reasons to reject that approach.

For one thing, causation is often a fact intensive inquiry.  The D Boys approach would mean that the relatively prompt and economical appraisal process would be by-passed in favor of the slow-paced high-cost litigation process.  This would undermine the legislative preference to grant the parties to insurance contracts a speedy and more affordable means for dispute resolution via the appraisal process.  See § 500.2833(1)(m).

_____

[7] Because it is unpublished, D Boys is not binding authority.  See United States v. Yates, 866 F.3d 723, 728 (6th Cir. 2017).

This view also could lead to courts and appraisal panels arriving at overlapping and duplicative factual determinations.  If the court conducted a factual inquiry concluding with a determination that there was a covered cause for a loss, then the amount of loss would still have to be determined by appraisers.  Such a process might well involve presenting much of the same evidence to appraisers, producing duplicative expense.

To illustrate: in the instant case, Federal claims that the press breakdowns did not produce the loss in business income.  Under the D Boys approach—which Federal endorses here—a court would hear the evidence of both sides to determine what caused the loss of income.  This would entail hearing potentially lengthy proofs on diverse issues like the impact of general economic downturn; the large-scale product recall and eventual bankruptcy of Takata, one of Proto Gage's customers; why Proto Gage received fewer requests for quotes from its customers; and why bids submitted by Proto Gage to new customers were not accepted.  See Br. Supp. Mot. Summ. J. at 22; Kiger Decl. ¶ 13; Tarchala Decl. ¶ 7 (Dkt. 38-3).  Assuming a court found some impact from the breakdown of the presses, it might find coverage and then order an appraisal.  But then the appraisers would likely have to hear the same evidence to parse how much of the business loss should be attributed to the breakdown of the presses and how much to other causes.  It is hard to imagine a more inefficient process for resolving this dispute.

This process would incentivize insurers to resist resolving claims, because by announcing a challenge to causation they would compel their insured to enter a lengthy and costly court litigation, with the possibility of more legal activity before an appraisal panel.  This enhanced leverage would undoubtedly compel many insureds, who do not have the

financial wherewithal to engage in such extended legal combat with their insurer, to agree to diminished settlements.

These outcomes may well not have been contemplated by the D Boys panel. Its statement that where an insurer contests coverage it is entitled to a "hearing," 644 F. Appx at 578–579, suggests that it thought somehow the process would be summary. But resolution of the issue of causation in a court proceeding would not be confined to a summary "hearing." It would likely involve extensive discovery—as Federal's demand for discovery confirms. See Resp. at 17–20. And it would seemingly trigger a party's right to demand a jury trial. D Boys's reference to an insurer's right to a "hearing" overlooks the lengthy and costly court effort that such a process would entail.

These factors serve to explain why courts have overwhelmingly ruled that factual disputes regarding causation must be resolved by arbitrators. See Haddock v. State Farm Fire & Cas. Co., 638 F. Supp. 3d 748, 761 (E.D. Mich. 2022) ("[A]ppraisers may—indeed, must—resolve questions of whether damage claimed by the insured was caused by the covered cause of loss.") (punctuation modified); Laframboise, 588 F. Supp. 3d at 769 ("[T]he appraiser must decide whether some part of the loss is attributable to a covered or non-covered cause."); Midtown Inv. Grp. v. Mass. Bay Ins. Co., No. 20-cv-10239, 2021 WL 3164274, at *5 n.4 (E.D. Mich. July 27, 2021) ("While the appraisers' role is in some sense always limited to valuation, appraisers are sometimes called upon to determine factual questions such as whether a particular loss is attributable to a covered or non-covered event."); Hart, 556 F. Supp. 3d at 747 ("Plaintiffs' claims for damages due to the amount and scope of the covered causes of loss must be submitted to appraisal under [§] 500.2833(1)(m)."); Cox, 2020 WL 1888824, at *7 ("[C]ourts make legal determinations as

11

to the categories of coverage; appraisers make factual findings as to whether specific damage

fits into those categories or not."); Smith v. State Farm Fire & Cas. Co., 737 F. Supp. 2d 702,

711 (E.D. Mich. 2010) ("[D]eciding what damages fall into which of the two defined

categories seems appropriately addressed by the appraisers[.]").  As the court explained in

Shina II: "to hold otherwise would compel the court to engage in exactly the 'crack-by-crack'

determination that courts applying Michigan law have urged should be left to appraisers, . .

. and would generate precisely the sort of litigation that the appraisal remedy was intended

to avoid." 2022 WL 989330, at *6 (punctuation modified).

Accordingly, the Court rejects the D Boys approach to applying Michigan's statutory

appraisal scheme and declines to follow it in this case.

Quite aside from D Boys, Federal's attempt to distinguish case law where courts in

this district have repeatedly held that factual disputes are for appraisers is similarly

unpersuasive.  See Resp. at 23.  Federal argues that these cases are inapplicable because none

of the defendant-insurers in those cases "den[ied] coverage."  Id. [8]

---

[8] Federal seeks to distinguish several cases cited by Proto Gage to support Proto Gage's argument
that courts are required to order parties to participate in Michigan's statutory appraisal process
where the insurer disputes damages but purports to raise a dispute as to coverage.  See Br. Supp.
Summ. J. at 16–19 and Resp. at 23–24 (citing Hart, 556 F. Supp. 3d at 746 (rejecting
defendant-insurer's argument that "amounts listed on [plaintiff-insured's] Proof of Loss and
[defendant's] estimate" were a "matter of coverage and not of price"); Haddock, 2022 WL
16625964, at *11 (holding, in part, that defendant-insurer could not "avoid the appraisal
process on the ground that there [was] a dispute over causation with respect to some of the
damage for which [plaintiff-insured] [sought] reimbursement"); Smith, 737 F.Supp.2d at 705
(submitting for appraisal the parties' dispute "regarding the extent of the damages caused by
the covered loss, and . . . the amount of remediation necessary to satisfy the obligations under
the policy"); UrbCamCom/WSU I, LLC v. Lexington Ins. Co., No. 12-cv-15686, 2014 WL
1652201, at *1 (E.D. Mich. Apr. 23, 2014) (ordering the parties to submit to appraisal a
dispute regarding plaintiff's "business interruption losses" stemming from water damage
from ruptured fire sprinklers where defendant-insurer had argued that "business interruption
loss" was a "coverage issue for court to decide"); Shina II, 2022 WL 989330, at *5 ("[T]he

However, it is not accurate to say that in all of these cases the insurers did not deny coverage. For example, in <u>Hart</u>, the insurer initially accepted liability but later refused to participate in the appraisal process because it argued that "scope of damages [was] a matter of coverage and not of price." 556 F.Supp.3d at 746. Because the parties' dispute "relate[d] to scope of damages and not to coverage," the court ordered the claims for submission to the appraisers. <u>Id.</u> (punctuation modified). Similarly, in <u>Smith</u>, which involved claims stemming from a fire to plaintiffs' home, the defendant-insurer initially "acknowledged the loss as covered under the policy" and submitted to appraisal, but later withdrew and attempted to deny coverage because an air-quality inspector's report found damages to the home that the insurer argued were not caused by the initial loss. 737 F.Supp.2d at 705. And in <u>Haddock</u>, the insurer acknowledged coverage for some damage stemming from a burst pipe but refused to pay for damage that it asserted was caused by another non-covered cause of loss. 2022 WL 16625964, at *1.

Thus, the courts ordered the appraisal process to be undertaken even though the insurers purported, in some way, to deny coverage. Each of these cases turned on whether the insurer denied coverage because it disputed the factual issue of whether the insured's losses were caused by the covered event—precisely the sort of factual dispute that the Sixth Circuit has explained should be submitted for appraisal. <u>Scottsdale</u>, 832 F. App'x at 999 ("[I]n Michigan appraisers resolve (at least in the first instance) any factual disputes about the amount of an insured's loss.").

---

Court will leave to the appraisers the determination of whether some of [plaintiff's] losses were not caused by the [covered event].")).

Federal is no different from the insurers in these cases, as it has both acknowledged coverage and purported to dispute it.  Federal originally acknowledged that the business income loss was legitimate.  It paid significant money—$299,276—on that claim.  See Kiger Decl. ¶ 16.  Only later did it backtrack and claim the payment was an "accommodation," and that it was based on inaccurate information and an incomplete investigation.  See id.  It is not accurate to say that Federal did not acknowledge coverage.  Its six-figure payments to Proto Gage confirm that it did.  Only later did it purport to retract that.

Federal's bobbing and weaving on coverage determination demonstrates not only that it is in good company with other insurers who have been ordered into appraisals; it shows the perniciousness of assigning dispositive treatment to an insurer's pronouncement that it is denying coverage.   It would undermine Michigan's legislative scheme to make the availability of the appraisal process turn on whether the insurer had announced a decision to contest coverage.   And if an insurer could successfully block an appraisal by initially acknowledging coverage and then recanting—as Federal attempts to do here—the appraisal process would become illusory.  Nothing would stop an insurer from identifying supposedly new information or generating some new analysis based on existing facts, and then asserting a justification for renouncing its earlier admission of liability.  This would mean no appraisal process would be safe from being derailed by an insurer that grows unhappy with that process.  If the contest between an insured and insurer is one of causation, it must be resolved by the process selected by the legislature—regardless of whether an insurer intones that it is denying coverage.

The parties' dispute regarding the extent of Proto Gage's lost business income resulting from the two press failures does not present a coverage issue for the Court.  Federal

14

may very well be correct that Proto Gage's asserted business losses resulted from causes other than the press failures.  However, that it is for the appraisers to decide.  Proto Gage is entitled to summary judgment on the issue of appraisal.[9]

### B.  Federal's Counterclaim

Given that the Court finds that the appropriate next step is for the parties to engage in arbitration, the Court need not address Federal's arguments about its counterclaim, which seeks a ruling that Proto Gage must repay the $299,276 it received for business income loss.  Those arguments assert that there are disputed issues of material fact with respect to the cause of Proto Gage's business income losses.  Resp. at 12–17.[10]  Because such evidence goes to the issue of causation, the sufficiency of this evidence is an issue for the appraisers, not the Court.  See Laframboise, 588 F. Supp. 3d at 764.

It follows that Federal's counterclaim is not ripe for consideration by this Court.  The appraisal will determine the amount of Proto Gage's loss, if any, and the amount of Federal's overpayment, if any.  The appraisal outcome may well moot the counterclaim.  See Anika &

---

[9] Federal also attempts to avoid summary judgment on appraisal by arguing that Proto Gage's motion "ignores" the Court's denial of Proto Gage's motion to dismiss.  Resp. at 10.  This argument is unavailing.  In the Court's July 6, 2022 order denying Proto Gage's motion to dismiss, the Court determined that it was not appropriate to dismiss Federal's counterclaim at the pleading stage.  See Op. & Order at 3 (Dkt. 26).  Nothing in that order precluded Proto Gage from filing a motion for summary judgment as to the availability of appraisal.  Moreover, the Court later entered an order specifically directing Plaintiff to file a motion for summary judgment regarding its ability to invoke the appraisal process.  See 12/7/2022 Order.  Federal's argument is without merit.

[10] Both parties cite to evidence to support their competing views as to whether Proto Gage suffered business income losses due to the press failures.  See Br. Supp. Summ. J. at 16 (citing sworn testimony of Proto Gage officials for the proposition that it lost business due to delays caused by the press failures); Resp. at 17–18 (asserting that the evidence will show that Proto Gage's losses were the result of a business downturn of its customers, not supply delays caused by press failures).  For the same reason, the Court need not address Federal's argument that Proto Gage's proffered evidence supporting its alleged loss of business income is inadmissible.  See Resp. at 12–14.

Assocs., Inc. v. Hartford Cas. Ins. Co., No. 11-12534, 2013 WL 1499532, at *5 (E.D. Mich. Apr. 10, 2013) (explaining that appraisal of parties' dispute regarding scope of loss resulting from building damaged by a tornado mooted defendant-insurer's counterclaim for declaratory judgment based on alleged misrepresentations about the estimated damage to the building made by plaintiff-insured). The Court will stay further consideration of the counterclaim until after the appraisal process is completed.

### C. Federal's Motion for Discovery under Rule 56(d)

Federal moves for discovery under Federal Rule of Civil Procedure 56(d), under which "a nonmovant responding to a motion for summary judgment may show by affidavit or declaration that, 'for specified reasons, it cannot present facts essential to justify its opposition.'" Clippinger v. State Farm Mut. Auto. Ins. Co., No. 2:20-cv-02482, 2021 WL 1894821, at *1 (W.D. Tenn. Apr. 22, 2021) (quoting Fed. R. Civ. P. 56(d)).

Federal's motion fails for the same reasons the Court grants Proto Gage's motion for summary judgment on appraisal. Additional discovery will not aid Federal's efforts to justify its opposition to appraisal of the parties' dispute. "Because the Court's role in this dispute is limited to resolving legal questions about the parties' policies—with factual issues consigned to the appraisers—there appears to be no need for discovery." Shina I, 2021 WL 391419, at *5 n.5. Indeed, requiring discovery would "eradicate the very efficiencies that the appraisal process is intended to promote." Shina II, 2022 WL 989330, at *6.

Because additional discovery is unnecessary to support Federal's opposition to Proto Gage's motion for summary judgment, the Court denies Federal's motion.

### III.  CONCLUSION

For the reasons set forth above, Proto Gage's motion for summary judgment (Dkt. 37) is granted, and Federal's motion for discovery pursuant to Federal Rule of Procedure 56(d) (Dkt. 38) is denied.

The parties are directed to initiate the appraisal process set forth by Mich. Comp. L. § 500.2833(1)(m).  Federal must select its appraiser within 20 days of this opinion and order.  If the appraiser selected by Federal and the appraiser selected by Proto Gage cannot agree on an umpire within 35 days of this opinion and order, either party may file a motion with the Court for appointment of the umpire, as provided for in the statute.

It is further ordered that this matter is stayed pending determination of the appraisal proceedings, subject to any lifting of the stay upon the filing of any appropriate motion, including to appoint an umpire, or to vacate or enforce any appraisal award.  The Court retains jurisdiction for all such purposes.  Because the Court expects the appraisal process to be completed within 90 days, a status conference will take place on January 11, 2024 at 3:30 p.m. by Zoom unless a proposed order or judgment concluding the case is submitted before that time.

SO ORDERED.

Dated:  September 29, 2023
      Detroit, Michigan

s/Mark A. Goldsmith
MARK A. GOLDSMITH
United States District Judge